Our next case is Bombardier Recreational Products v. Arctic Cat, 2018, 2388 and 2424. Is it Mr. Connealy? When you're ready. Good morning and may it please the court, Kevin Connealy for BRP. The district court committed several errors in denying BRP's JMLL motion after trial on the issues relating to Arctic Cat's invalidity defenses. I'd like to start by highlighting one relating to Claim 8 in the 847 patent. Claim 8 is a dependent patent claim and the court, unfortunately, at A22 and 23 in its post-trial rulings simply glossed over it. It made no mention of it at all. And that's probably indicative of the failure of proof that Arctic Cat made a trial through its expert. If you look in the blue brief on pages 35 and 36, and here I need to point out an error of our own. I apologize to the panel. We have a reference at the top of page 36 to A3538. And that page is actually found in the appendix at 3471. But on the bottom of 35 carrying over to the top of 36, what you will plainly see is six lines of conclusory hindsight testimony from Mr. Carpick, Arctic Cat's expert, about Claim 7 and 8. Not looking at the claim language, not talking about motivation to combine. This is the kind of hindsight and conclusory testimony this court has repeatedly said was insufficient as a matter of law in cases like InTouch and other cases that we cite in our briefs. I just wanted to point that out on the 847 patent with respect to that failure as indicative of the other obviousness failures that the district court made, probably because of the lack of proof by Arctic Cat. There's simply nothing addressing any of the KSR factors with respect to Claim 7 and 8, the upper column limitation and the upper column forming the apex, including the secondary considerations. We were going to be considering substantial evidence. That's the standard we should look at. We have to presume that the jury made fact findings in favor of finding these claims invalid, right? So your argument really is failure of proof. Does it matter necessarily whether in the Jamal motion or the Jamal decision the district court talked about, you know, that all of the, I guess I'm wondering what is the import of errors in the district court's decision? So long as there's, if we find substantial evidence to support the jury's factual findings, isn't that sufficient? Don't we review judgments, not opinions when we're looking at Jamal, right? You do, Your Honor. But part of your premise is that there was substantial evidence in the record, and that's what I was trying to point out. I get it. I want to make sure you're focusing on that. That's all. No, that's right. So where there is simply conclusory expert testimony that doesn't address any of the KSR factors, including motivation, that is the basis on which we think the evidence was insufficient. And that's why the Jamal should have been granted an obviousness as to those elements, those claims of the 847 patent. I would like to turn, in the interest of time, to the 669 patent, where there are also errors that the district court committed with respect to indefiniteness. And if there's time, we'll talk about anticipation as well. The 669 patent is not indefinite as a matter of law. The sole claim term that was at issue was this term seat position defined by a seat. Is that construction of that term, seat position defined by the seat, the construction there that reads in figures 9A, 9B, and 10, that was your proposed construction, is that correct? We did, yes. Actually, I should be clear. We proposed that it be the definition, the specification of the standard rider. And then the court said, in fairness, we should have the standard rider according to claim to figures 9A, 9B, and 10. But we certainly didn't oppose reading that in. And you haven't appealed that issue? You haven't disputed the claim construction at all? No one's appealing the claim construction. What do we do where there's expert testimony disputing whether one of Ordinary Scale New York can look at figures 9A, 9B, and 10 and figure out what this is defining? You take this court's guidance from the Biosig case after a remand from the Supreme Court and you look at the intrinsic record and you say, was there enough guidance in the intrinsic record for someone of skill in the art to look at figure 9A and determine what are the relevant dimensions in order to practice the patent? Isn't there a jury finding on that factual issue? On the question of whether looking at figures 9A, 9B, and 10, there was conflicting expert testimony. On how opposed it would look at that, how a person of Ordinary Scale New York would understand that. And there's a jury finding of indefiniteness. I would say this, Your Honor. We fought against, at the jury charge, we fought against having this jury instruction. Because we considered it to be an issue of law. And if there were underlying factual issues, the court could make those factual findings. Are there underlying factual issues here? No. Because there are no errors that are relevant to the dimensions of finding the 50th percentile adult male. That's what I find interesting about your argument. Is that you accept, because you advanced the notion that your claim construction for this seat position limitation rests on lexicography. Your side, the inventor, was his own lexicographer in defining this particular claim term. And nobody is disputing that on appeal. So the district court had to identify what was the definition provided in the specification. And it found reasonably, I think, the idea that it's whatever a standard rider would be. And then all the elements that are described as being the ruler for what a standard rider is in the written description. Including all the dimensions itemized in figures 9A, 9B, and 10. Your argument in your briefing and today seems to be, well, only some of those dimensions that are listed in figures 9A, 9B, and 10 really matter. And we should ignore the other dimensions that turn out to have lots of mathematical defects in them as not being relevant. And I just don't understand how you can try to define your lexicography by only half a loaf. I think you have to take the whole loaf. And if it turns out there's lots of mold in your loaf, that's really the problem and defect that you have to live with, with the lexicographic definition provided in your written description. Taking no offense at the mold reference, Your Honor, let me try to unpack that. Because you have to look at the one of ordinary skill on a definiteness analysis has to look at the intrinsic record. And this court has to look at the intrinsic record and say, could someone of ordinary skill understand the claim scope with reasonable certainty? So let me try to address that very point. At trial, my friends brought out a number of errors in the 90th percentile and the 10th percentile. Now, everyone agrees those can't be relevant because the only thing claimed is a 50th percentile. They also tried to convince the jury that the standing height of an adult male was somehow relevant to determining the dimensions of the standard rider on a snowmobile. It may be relevant for, as they pointed out, your driver's license, but it certainly isn't relevant in the context of this patent. So let's talk about the intrinsic record. When you look at Figure 7 of the patent, you see a rider, a one-up rider, a single person on the road. And that shows very common sense, someone seated on a straddle seat with their arms forward and their feet NHL. But I think the best proof of what the intrinsic record shows are the relevant dimensions, are the portion that Arcticat actually cites in its own brief, and I'm on page 7 of their brief. It can also be found in the appendix at 6563 where the inventors told the patent office very clearly during prosecution what the relevant dimensions were. They said, contrasting their invention with a prior art, they said, well, don't look at that prior art. Here are the relevant dimensions. Which part? I'm looking at page 7 in the red brief. Maybe you're about to read it. But what part are you relying on? At the very bottom, Your Honor. OK. There's a cite to APPX 6563. Where the standard rider has a torso length of 45.7 centimeters, I see. Yes. And the problem I'm having is simply the claim construction of this term that was provided to the court and is not on appeal. And that's the construction of the term. And it's not that the standard rider has a torso length of 45.7 centimeters. It's instead something that refers to figures 9A, 9B, and 10, and which were the subject of expert testimony that the jury could have credited, saying that there were errors and that one of ordinary skill in the art would have difficulty understanding how to follow those figures to figure out what the 50th percentile person is. But I understand that the term seat position defined by the seat seems like something probably every snowmobile could have. And it does. But the problem is the claim construction. Well, respectfully, it's Arcticat who's trying to imbue ambiguity where there is none. I was pointing to the court to those five or six dimensions that the intrinsic record tells the person of ordinary skill and tells the court, these are the relevant dimensions. So our expert, Dr. Rausch, took those dimensions, looking at figure 7 of that rider, and said, that rider, I'm going to use those dimensions. I'm not going to use standing height or some outstretched arm. And that's what she did. And that's what she proved infringement with. That's what we proved infringement with before the jury. That's how we proved the patent was not enabled. That's how Arcticat's own expert used the standard ATD, the dummy, which lived these same dimensions, in order to try to prove invalidity. Everyone used the same method. Is there a standard dummy that's the 50th percentile North American man? There is. I thought there were some difficulties in making a proper dummy in this case. I think the questioning at that point, Your Honor, was whether it would be difficult with all the errors that don't relate to the seat standard position. It might be hard if you incorporated the standard dummy with the standing height error. I think that was the testimony. But no one, it was undisputed, Dr. Rausch, our expert at trial, was able to use the figures I just recited that are in the prosecution history, the torso, the two arm lengths, the leg lengths, and compare that to the dummy. And she did. And it's very close. And that's how she determined the seat position. And I'd also like to remember this is an issue of law for the court on indefiniteness. I think there could be underlying issues of fact, just like in claim construction. We have been instructed that there could be underlying issues of fact. Similarly, in indefiniteness, there could be underlying issues of fact as you're trying to determine what the scope of the claimant is and whether it even could be determined. That's true. But when a party tries to interject ambiguity where there is none, that's not relevant to— They have an expert who's— Okay, your point is that the expert testimony is irrelevant. Yes. Their expert attacks on the standard position, or excuse me, on the seat position defined by the seat are irrelevant. And I'll raise another issue. Claim 88 is different in kind from some of the other claims that were in the case that are in the patent in the 669. And if I could, just refer the court in the appendix at 401. This is column 21. Claim 80, another independent claim, requires that that event should have a seat position disposed a certain distance from another component of the snowmobile, the forward-most drivetrack axle. Claim 97 is another claim of the patent, not asserted here, where the seat position is disposed some distance relative to something else. For those kinds of claims, I could understand if a party was going to try to make some definiteness argument but the seat position defined by the seat in Claim 88 is just that. It doesn't require some sort of further scrutiny. The construction that was given to the jury was for its aid to understand what it meant. But the claim, 88, it calls out a straddle-type seat, a standard component of the conventional snowmobile, a standard component of our claimed snowmobiles, a standard component of the infringing snowmobiles. Counsel, you're well into your rebuttal time. We'll give you two minutes for rebuttal, but before you sit down into your seat position, there's been a motion by Pelley to supplement the record with three pages of testimony. I assume you don't object. As the party who first noticed that it was missing, I have no objection, Your Honor. Thank you very much. Mr. McCloud. Good morning, Your Honors. Neil McCloud representing Pelley Articat. May it please the Court. From counsel's comments, it sounds like they're slowly coming to realize that it is the claims as construed that matter for purposes of indefiniteness. You don't construe claims and then push the construction aside and go back to analyzing the unconstrued claim. It's the construction that matters. It's what the claims mean that you look at for indefiniteness. Anything else would be illogical and, I think, inconsistent because, as the Court pointed out, the construction of the seat position defined by the seat is actually what they proposed and the Court adopted. How do you respond to the point that your client's expert testimony is irrelevant because it talks about measurements that have about the 90th percentile male or the 10th percentile male or positions that, you know, total height, not something that matters with respect to sitting on the snowmobile? In a couple of ways, Your Honor. First, he did analyze the 50th percentile dimensions, which are the middle dimensions on those figures. He expressly said in his testimony, I'll ignore the 5th and 95th percentile errors, although there are some. With respect to what dimensions are relevant, first of all, there is no carve-out in the construction for the following dimensions in figures 9A and B. There was no proposal like that from BRP that only these dimensions matter. But more to the point, our expert, Warner, did analyze those dimensions. The point that Mr. Warner was making with respect to the overall height of the body build in figures 9 and 10 and the overall arm dimension is that they don't add up. The overall dimension does not match all these sub-dimensions. You don't know where the errors are. You can't account for that discrepancy. It makes it more than just an error. It makes that ruler, and this is the claimed ruler. There will be no mistake about that. The only reason we're talking about these figures is because that is the ruler that all measurements are made with. You don't know what the dimensions of that ruler are because of the discrepancy between the overall dimension and all the sub-dimensions that BRP says are relevant. An analogy I thought of is, I think it's a good one. If somebody hands you a ruler and it's got 14 on the left side, 14 units, whatever, inches, centimeters, and on the right side it's got 23, for example, inches or centimeters, whatever dimensions, and they say, you know, go measure something. Go measure the court's bench and report back with reasonable certainty as to what the height is. You can't do it with that ruler, and that's the ruler I'm describing. You can't do it. You can flip a coin, which is what I think their aspect did, and said, well, I'm going to choose these dimensions and ignore the fact that they're inconsistent with the overall height dimension. But if you're being honest, you have to report back, I cannot do this measurement with the tool I've been given. It's broken. It doesn't work. You can't do it. You can't come to any reasonable certainty on what the height of that bench is with this flawed ruler. So that was the point of his testimony, and he did address the relevant dimensions, what they, what BRP calls the relevant dimensions, in terms of the overall height. And his testimony really shows that you can't do anything with this ruler because you have no idea where the discrepancies lie. There was also. In analyzing the validity of the claims in view of the prior, you had an expert who was able to present evidence, right, based on, I think, just standard measurements of a North American male of 50th percentile, right? Maybe there was a dummy that had those dimensions. Why is it that we shouldn't ignore the errors in the figures, in this case, since one of ordinary skill in the art would know that there's a standard dummy that has those dimensions? First of all, the dummy that they used does not have the same dimensions as the one in, as the dimensions in the patent. It couldn't. Those dimensions are flawed. You can't determine what they are. So the dummy is, I think our testimony was from Warner, it's not a surrogate, and we've shown that in our briefs. It's not a surrogate for what is claimed in the patent. The dummy photos you saw were, by our expert, were an attempt to replicate measurements that BRP was doing for infringement. And he was only using the dummy, so he couldn't be accused later of doing his own measurements. He was trying to replicate what they were doing for purposes of infringement. But our position is you can't do any measurements with this body build in figures 9A and 9B and 10 at all. You can't come to any conclusions. And the ATD doesn't help you. ATD being the dummy that was used. Council brought up Claim 80, which was previously asserted in the case. And that's actually when the party's experts were using the crash test dummy to do measurements. Claim 80 is actually instructive here. Claim 80 also recites the term seat position defined by the seat. Claim 80 does provide an actual measurement using that seat position defined by the seat, which is a point on the seat. There should be no mistake about that. It is a point. Claim 80 says the seat position defined by the seat must be less than 590 millimeters from the forward axle. So it's a precise measurement. 591 would escape infringement. 589 millimeters would be within that limitation. The point I'm trying to make is seat position is in both of those claims. It means the same thing in both of those claims. It's a rare case where a claim term means something different in one claim than it does in another. Claim 80, I think, emphasizes or you get a greater sense or a quicker sense of just how indefinite these claims are because of seat position defined by the seat. You can't take any measurements down to the 590 millimeter dimension using this flawed ruler where you don't even know which dimensions to use. I'd like to address a few things on the 847 patent. I think the court pointed out we really are just, you know, BRP's appeal really is just about contesting the evidence, saying there's not enough substantial evidence. And we're up here on appeal with a jury verdict that there was, you have to view the facts in light, most favorable to Articat. And they did find claims 1, 6, 7, and 8 of the 847 patent invalid. Do you agree with opposing counsel's assessment of the only evidence that was provided on claim 8 and showing its invalidity? No, I don't. The evidence is that the upper column that was referred to in claim 8 is prior art. It's admitted prior art in their patent. That's evidence. Our expert did testify as to a motivation to combine this simple prior art structure, the upper column, with snowmobiles, and that's at appendix 3475. So there is a motivation to combine in the record. They seem to be hung up on, or seem to be suggesting there's some requirement that an expert sit and recite every single claim every time he's going through it. Almost like a magic words requirement that experts have to go through. And there isn't one. The reason probably for that is clear. That would be a rather onerous thing for an expert to do is to memorize each claim and recite it every time you move on to the next claim. I will point out that when our expert Karpik was testifying regarding these claims, he was using, as experts often do in patent cases, a claim chart up on the screen where he was checking off each box for each claim as he went through it. So the claim term for claim 8 and for claim 7 and for claim 6 were all on the screen for the jury when he was marching through his analysis. You've withdrawn your cross-appeal. We have. Are you still arguing non-infringement? We are. I don't think that dropping the cross-appeal affects that. Right. Why not? Why not under radio steel where the judgment in this case, if you look at the district court's judgment, it has one paragraph related to infringement and a different paragraph related to validity. So why wouldn't your argument, if you were successful, enlarge the scope of the judgment, thus requiring you to file a cross-appeal? Mike, I don't know that specific case. I'm sorry, I don't. But all the other cases I've read on this in the court's precedent are that infringement is, I guess you could call it, a subset of invalidity. You can't infringe an invalid claim. So with the defense of non-infringement, you are not enlarging your finding of invalidity. In other words, you were a winner on invalidity. Essentially, yeah, the prevailing part on invalidity. Thank you. Just a few comments on the anticipation of Claim 88 of the 669 patent under Hattin and Foxtrack. I think in BRP's brief, they're confusing a few things on the Hattin. First of all, they concede that the teen snowmobile anticipates Claim 88 of the 669 patent. They don't dispute any of the elements there. They just dispute. They don't even dispute it's public. They just say it wasn't public enough. It was public. It was ridden, rode by Roger Scum on a public highway in Minnesota. It's fully corroborated. What BRP, I think, misses in their brief is that the Hattin snowmobile itself, which we had at trial, and the jury saw it, and all the witnesses identified it. The Hattin snowmobile itself is corroborating. You can corroborate with a physical exhibit as much as you can with a document. So the Hattin snowmobile corroborates Roger Scum's— where if we start to adopt it, we start going down a slippery slope. We have witness A saying, oh, yeah, I remember seeing this snowmobile 35 years ago. I rode on it. And you have witness B saying, oh, yeah, I remember seeing that snowmobile 20 years ago. And then that's it. If that was the evidence of so-called corroboration, would that be enough? Two witnesses saying they saw it 20 years ago? Somewhere in there, it's not enough. I would say that it is in this case, obviously. You have two witnesses identifying the exact same snowmobile, and it's a distinctive snowmobile. They're not saying, you know, I saw a Toyota out in the seat that you may have seen 10 years ago. It's a distinctive snowmobile, and we have more than two. We have also Joel Hallstrom, who said he saw a photograph of that very distinctive snowmobile in 1987. And we have the later testimony of witnesses who heard about Roger Scum's ride on the Hattin snowmobile. And again, he pointed out the exact snowmobile, and it's a distinctive one that he rode on. You think it's a matter of the credibility of the witnesses? I'm sure that's part of it, probably a major part of it. And that's something for the jury to really examine, credibility and things like that. I only have a minute and a half left. I just wanted a few more words about the obviousness of the dependent claims in the 669 patent. That's claims 92 to 95. Those add what I would call minor limitations to a claim that's already been found to be anticipated. They add those ranges for the steering position. We're asking the court to reverse the district court on this, where he found those are not obvious. So why are we special? Why can we get up here and say reversal's a good idea for that, whereas BRP can't for any of theirs? I think the court below on this issue spent or gave an inordinate amount of weight to the fact that when you combine two references, you often have to make modifications. He seemed to be hung up on that, that if you combine the Hattin, for example, or the Foxtrot, for example, with... Can I interrupt you just for a minute? This issue that you're talking about, there's a jury verdict on this issue, right? Or am I confusing the issues? There is. There's no finding that claims 92 to 95 are obvious. So the question is whether substantial evidence supports the jury's verdict, right? Yes. I'm saying there isn't to support that. So you're going to explain why there's no evidence? I'm going to explain why there isn't substantial evidence. The court gave an inordinate amount of... The jury gave an inordinate amount. The jury, too, to the fact that you have to modify the prior arm sometimes. If that was the standard, you can never combine two references, because there's always going to be modifications when you combine two things. The key part of this, though, is that BRP's own expert witness, when asked about these claims, the claim ranges, he was asked whether a person of skill of art in the 1990s, i.e., back in the prior art days, without knowledge of the 669 patent, the question expressly excluded the 669 patent, would be motivated to use the 40 to 90 millimeter ranges. And his answer was, if that range complemented his or her design, yes. So their own expert is saying these ranges are nothing but a design choice, well within the skill of one in the art. I think that testimony is... Thank you, counsel. Mr. Connealy has two minutes for rebuttal, if you need it. Thank you, Your Honor. With the point that, with regard to the claim construction point the counsel was making, the court construed the claim seat position defined by the seat as referring to the body build of that 50th percentile male and seated in a natural operating position. Not standing, not walking, not stretching its arms out. Seated in a natural operating position. And we submit that that is the natural operating position shown in all the figures, but most especially figure 7 of the 669. And we would refer the court to compare, we were talking about the red brief at 7 with that citation to the intrinsic evidence from the file history. That's at appendix 6563. Those figures, when you compare those figures to the 669 figure 9A, we have appendix 387, they're exactly the same. And they're exactly the same figures that Dr. Rausch used to prove or to show the infringement. So we think that that shows that, and I also point out that the jury found enablement of the patent, that you can practice the patent. And so the other thing I want to point out is that counsel said something about that there has to be an exact point on the straddle type seat. Again, let's look at the claim construction. A portion of the straddle type seat, understanding that when someone sits down, they're not going to contact the seat only at one point. The issue here about indefiniteness is reasonable certainty. Let me be brief on anticipation. We don't agree that that was a public disclosure when Mr. Hattin took Arctic Cat's vice president out for a ride. We don't even think it was corroborated. In fact, if you were going to accept Arctic Cat's evidence presented to the jury in this case, as sufficient corroboration, a single interested witness, you would be undoing Finnegan to start with. You would also be undoing basically a century of corroboration requirements by the Supreme Court and this court, because, Judge Lurie, to your point, credibility is not the issue. We don't defer and say, well, one person's telling one story as long as they're credible. We'll let it get by. That is not the corroboration requirement. They have the duty by clear and convincing evidence to show that this Hattin was ever public. I would ask the court to compare the facts of this case to the Moleculon Research case, the Rubik's Cube case, where there was a lot more disclosure by that inventor than there was by Mr. Hattin. Briefly on obviousness, as Judge Stoll, you pointed out, the jury didn't buy their story on obviousness as to those claims 2 through 95. There was substantial evidence and the district court cited to it in its JMOL. But the other point we would make is we believe that the anticipation result that the court reached was wrong below. Hattin and Foxtrack don't anticipate, neither one anticipates, and so without anticipating references they can never get to obviousness anyway because they're missing necessary elements of the patented invention. Thank you, counsel. Your time has been consumed. Thank you. We'll take the case under revision.